UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-20318-CIV-MOORE/SIMONTON

MARIA OBANDO )
)
Plaintiff, )
vs. )
)
M&E INVESTMENT PROPERTIES, INC., )
D/B/A ALAMO HOTEL, and )
MAVIS SIMPSON )
)
Defendants. )
______________________________________ )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** the Plaintiff, through counsel, and hereby files this Opposition to [DE 37] as follows:

## INTRODUCTION

1. This matter sounds under the Fair Labor Standards Act.
2. As set forth below, Defendants' Motion for Summary Judgment should be denied.
3. Defendants argue that FLSA coverage (i.e. subject matter jurisdiction) is lacking. However, this Court should affirmatively find FLSA coverage as set forth in Plaintiff's own separately filed summary judgment.
4. Defendants also argue that since the individual Defendant Mavis Simpson's liability is derivative of the corporate Defendant, the Court should also dismiss Defendant Simpson.

## MEMORANDUM OF LAW

1. ***Summary Judgment Standard and Defendants' Dismissal Arguments***.

In their Motion, Defendants raise a dismissal standard in arguing that Defendants did not properly plead FLSA coverage. Plaintiff refers to her arguments in her response [DE 22] to Defendants' motion to dismiss. As a pleading matter, the minimal pleading standards have been met as the $500,000[1] and interstate commerce prongs have been alleged in the Complaint. *See, e.g*. Para. 11 of the Complaint. Moreover, as is set forth in [DE 22], Para. 12 of the Complaint cites the case of *Heart of Atlanta Motel v. United States*, 379 U.S. 241 (1964) which provides further arguable grounds regarding establishment of FLSA coverage as set forth *infra*. In this case, Defendants are able to frame an Answer and apparently did not file an Answer yet after dismissal was denied [DE 27]. Dismissal was denied in [DE 27], and the Court in [DE 29] expressly clarified and permitted discovery regarding "individual and enterprise coverage" and also concerning transient guests. *See also* Para. 10 of the Complaint which states that the FLSA applies, and Para. 10 addresses both "Defendants business and the Plaintiff's work…." Thus, [DE 29] correctly permitted discovery regarding "individual and enterprise coverage" and also concerning transient guests.

Pursuant to Fed.R.Civ.P. 56, a summary judgment should be granted if, following sufficient discovery, there is no genuine issue of material fact to be decided by a jury; therefore summary judgment is to be granted as a matter of law. *Hoffman v. Allied Corp., et al.,* 912 F.2d 1379, 1383-84 (11th Cir. 1990), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining if a genuine issue exists, the court must query whether

[1] However, the $500,000 prong is no longer relevant in this matter as Plaintiff is not arguing enterprise coverage following the discovery process.

"a reasonable jury could return a verdict for the nonmoving party…." *Hoffman v. Allied Corp., et al.,* 912 F.2d at 1383. *See also, Beal v. Paramount Pictures Corporation*, 20 F.3d 454, 459 (11th Cir. 1994)("Summary Judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); *Silas v. Hillsborough County*, 2006 U.S. Dist. LEXIS 79503, *3-4 (M.D. Fla. 2006)(in FLSA matter court found "[s]ummary judgment is proper if following discovery … there is no genuine issue as to any material fact…."). The facts below demonstrate the Court should affirmatively find FLSA coverage in this cause as a matter of law.

2. ***FLSA Coverage***.

***Individual Coverage including Interstate Telephones Communications***.

As set forth in Plaintiff's Affidavit, Plaintiff worked from January 7, 2008 through January 24, 2011 for the Defendants. Plaintiff states that "During my employment, I would work as a housekeeper and also at the front desk in the mornings." Defendants' employee Mr. Rafael Swanson, admitted the Plaintiff would fill in for Paulette Chambers at the front desk from 9 until 1. Swanson Deposition, P6. L16-25; P7 et seq. Plaintiff worked at the front desk on a daily basis. Swanson Deposition, P9. Swanson's Deposition transcript and Plaintiff's Affidavit were already filed in connection with Plaintiff's own pending summary judgment motion.

Under an individual coverage analysis the Plaintiff could also be covered if "engaged in commerce". *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006). Among other things, *Thorne* stated that being "engaged in commerce" (such "directly participating in the actual movement of persons...in interstate commerce") includes "or (ii) by regularly using the instrumentalities…" such as

"interstate telephone, telegraph" etc. *Thorne* at 1266-1267, *citing* 29 C.F.R. § 776.23(d)(2)(2005); 29 C.F.R. § 776.24 (2005).

Notably *Thorne* stated that the plaintiff in that case did not show that "he corresponded" with merchants outside of Florida using "mail, phone, or fax". *Id.* at 1266-1267. As set forth below, the Plaintiff in the case at bar regularly corresponded via telephone with out of state hotel guests who made reservations.

As set forth in Plaintiff's Statement of Material Facts and Affidavit (emphasis added) Plaintiff denies she was simply a housekeeper. Plaintiff regularly worked at the front desk and performed various tasks concerning interstate guests. Plaintiff states in her Affidavit that "my position was housekeeper, and I was hired as a housekeeper, but I would work at the front desk every morning beginning in April 2008 until the end of my employment. While working at the front desk, for English speaking customers, I would have a checklist of questions to ask for purposes of taking reservations, such as how many people would be staying at the hotel, for how many nights, etc., and I would take reservations based on these questions. For Spanish speaking customers, I would also take reservations and provide instructions on checking in and details about the hotel. I worked from 7a.m. until 1p.m. at the front desk. While Paulette Chambers would occasionally work at the front desk, she would not do so every day, and when she did come it would be at 10a.m. or after. Some days outside of peak season she would not come to the hotel at all. Sometimes I would not see her for multiple days at a time. **While I would never arrange airline transportation for customers, I would arrange for ground transportation to the airport as discussed above.** While I am not fluent in English, I speak English well enough to use the questionnaire to take reservations. **In the off**

**season, approximately 30-40% of customers came from Central and South America, and as I was the only employee at the hotel who spoke Spanish, I would exclusively deal with those customers, regardless of what time of day it was."**

Plaintiff moreover states in her Affidavit (emphasis added) that "**I would regularly arrange for ground transportation to take hotel customers to the airport to return to their homes outside the State of Florida.** For instance, we had several customers who would come from New York and stay for months at a time during the winter. At their request, I would arrange for ground transportation to take them to the airport when they were leaving to return to New York. **Additionally, every day while working at the front desk I would take reservations over the phone from out of state customers, many of whom would tell me they were coming from Argentina, Costa Rica, Venezuela, Ecuador, Colombia, New York, or elsewhere. Additionally, upon checking into the hotel, the guests would provide their home addresses for us to complete their registration forms so I would know when they were coming from out of state. I would be the only person working at the front desk speaking Spanish so I would take all reservations from Spanish speaking customers from Central and South America and elsewhere.** Also, about three times a week I would be required to confirm reservations from out of state customers by calling them on my personal Metro PCS cell phone. These individuals would then come stay at the hotel, and upon checking out would return to their homes out of state." Plaintiff also states in her Affidavit that "I would estimate that 90% of our guests were from out of state. I would check in between 7 and 10 rooms per week, and many more would check in during the afternoons as the majority of guests arrived after 1p.m."

As stated, among other things, *Thorne supra* stated that being "engaged in commerce" (such "directly participating in the actual movement of persons...in interstate commerce") includes "or (ii) by regularly using the instrumentalities…" such as "interstate telephone, telegraph" etc. *Thorne* at 1266. Notably *Thorne* stated that the plaintiff in that case did not show that "he corresponded" with merchants outside of Florida using "mail, phone, or fax". *Id.* at 1267. Unlike *Thorne*, in the instant matter Plaintiff states in her Affidavit that "every day while working at the front desk I would take reservations over the phone from out of state customers, many of whom would tell me they were coming from Argentina, Costa Rica, Venezuela, Ecuador, Colombia, New York, or elsewhere. Additionally, upon checking into the hotel, the guests would provide their home addresses for us to complete their registration forms so I would know when they were coming from out of state. I would be the only person working at the front desk speaking Spanish so I would take all reservations from Spanish speaking customers from Central and South America and elsewhere."

Moreover, analogously in *Fernandez v. Silverstone Investments, Inc.,* 2005 U.S. Dist. LEXIS 45311, *9 (S.D. Fla. 2005), *9-12 this Court specifically found individual FLSA coverage, and in its individual coverage analysis noted that a night watchman "protected the customers inside the hotel" who had "crossed interstate lines". The Affidavit of Plaintiff as set forth above demonstrates that Plaintiff regularly dealt with interstate guests over the phone, assisted with reservations and even arrange for transportation to the airport for purposes of interstate travel.

To provide the Court with evidence regarding the extent of out of state guests that stayed with the Defendants during the relevant period, in relation to her own pending

summary judgment motion Plaintiff attached to her statement of facts (and in separate notices of filing) a significant number of hotel registration forms showing Defendants' clients resided outside the state of Florida during the relevant period. Such documents were provided by Defendants through discovery. The said attachments proving that Defendants served significant interstate clientel are voluminous and therefore include (16) attachments. Consequently, even when Plaintiff was performing her housekeeper duties she was regularly serving transient guests who came from outside of Florida and then returned to their foreign or out of state destinations. Such is directly on point in comparison to *Fernandez* where night watchman "protected the customers inside the hotel" who had "crossed interstate lines". However, in the instant matter, Plaintiff was even more directly involved individually with interstate commerce because she regularly worked at the front desk, spoke with guests who were outside of Florida and assisted with their reservations. Plaintiff was even involved in the movement of persons in interstate commerce because, as stated, she would arrange for transportation to the airport to assist the guests with interstate/international travel. Among other things, *Thorne supra* stated that being "engaged in commerce" (such "directly participating in the actual movement of persons...in interstate commerce") includes "or (ii) by regularly using the instrumentalities…" such as "interstate telephone, telegraph" etc. *Thorne* at 1266. *See Thorne* at 1266-1267, *citing* 29 C.F.R. § 776.23(d)(2)(2005); 29 C.F.R. § 776.24 (2005).

Analogously Plaintiff also refers to *Walters v. American Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1230 and FN15 (11th Cir. 2009), *citing Executive Town & Country Servs., Inc. v. City of Atlanta*, 789 F.2d 1523 (11th Cir. 1986). The *Walters* line of cases deal with the Motor Carrier Exemption as applicable to the FLSA, and such concerns the

issue of interstate commerce in relations to the exemptions applicability. Adequate interstate commerce can be triggered in relation to the MCA by, for example, intrastate commuter services that transport persons bound for interstate travel. *Id.* In the instant matter, as stated the Plaintiff "regularly" arranged for ground transport leading to interstate travel.

To provide the Court with further evidence regarding the extent of out of state guests that stayed with the Defendants during the relevant period, in relation to her own pending summary judgment motion Plaintiff attached to her statement of facts (and in separate notices of filing) a significant number of hotel registration forms showing Defendants' clients resided outside the state of Florida during the relevant period. Such documents were provided by Defendants through discovery. The said attachments proving that Defendants served significant interstate clientel are voluminous and therefore include (16) attachments. In her Affidavit, Plaintiff states that "I would regularly arrange for ground transportation to take hotel customers to the airport to return to their homes outside the State of Florida." Also, as set forth supra in more detail, Plaintiff states in her Affidavit that "every day while working at the front desk I would take reservations over the phone from out of state customers, many of whom would tell me they were coming from Argentina, Costa Rica, Venezuela, Ecuador, Colombia, New York, or elsewhere. Additionally, upon checking into the hotel, the guests would provide their home addresses for us to complete their registration forms so I would know when they were coming from out of state." Among other things, *Thorne supra* stated that being "engaged in commerce" (such "directly participating in the actual movement of persons...in interstate commerce") includes "or (ii) by regularly using the

instrumentalities…" such as "interstate telephone, telegraph" etc. *Thorne* at 1266. *See Thorne* at 1266-1267, *citing* 29 C.F.R. § 776.23(d)(2)(2005); 29 C.F.R. § 776.24 (2005). There is at the least a question of material fact in the instant matter as to whether individual FLSA coverage exists, although Plaintiff in her own separately filed motion seeks partial summary judgment as to such issue.

***Transient Guests***.

In addition, the Complaint at Para. 12 cites the case of *Heart of Atlanta Motel v. United States*, 379 U.S. 241 (1964), wherein the Supreme Court of the United States under the Civil Rights Act of 1964 described how coverage under that Act extends to businesses that serve the public such as those which provide lodging to transient guests. The Civil Rights Act and the FLSA, both remedial statutes have consistently been interpreted in tandem: "We regard Title VII, ADEA, ERISA, and FLSA as standing in *pari passu* and endorse the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another. See, e.g., *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 60 L. Ed. 2d 609, 99 S. Ct. 2066 (1979); *Lorillard v. Pons,* 434 U.S. 575, 584, 55 L. Ed. 2d 40, 98 S. Ct. 866 (1978); *Wheeler v. Hurdman*, 825 F.2d 257, 263 (10th Cir. 1987); *Hyland v. New Haven Radiology Assocs*., 794 F.2d 793, 796 (2d Cir. 1986)." *Serapion v. Martinez*, 119 F.3d 982, 985 (1st Cir. P.R. 1997). FLSA coverage a statutory, and not jurisdictional.[2]

---

[2] This Court has original jurisdiction over the federal law FLSA claim under 29 U.S.C. Section 1331 (civil actions under the Constitution, laws and treaties of the United States). Thus, the Court has "jurisdiction" to hear the instant matter, although a **statutory dispute** concerning FLSA coverage exists. The First Circuit in *Chao v. Hotel Oasis, Inc*., 493 F.3d 26, 33 (1st Cir. 2007) concluded that enterprise coverage is not a jurisdictional question under the FLSA in light of the Supreme Court's ruling in *Arbaugh v. Y&H Corp*., 546 U.S. 500 (2006); although the Eleventh Circuit in *Turcios* did not rule on such

Plaintiff raises this *Heart of Atlanta Motel* argument as an additional grounds to assist with determining whether the FLSA's statutory construction can be interpreted as extending automatically to businesses which provide lodging to transient guests. In the instant matter, Plaintiff was directly involved individually with interstate commerce because she regularly worked at the front desk, spoke with guests who were outside of Florida and assisted with their reservations. Plaintiff was even involved in the movement of persons in interstate commerce because, as stated, she would arrange for transportation to the airport to assist the guests with interstate/international travel. Given the nature of the business conducted by hotels/motels, *Heart of Atlanta Motel*'s logic is clear as to why the Court found sufficient interstate commerce in relation to businesses that provide lodging to transient guests. Plaintiff's argument is that traditional individual FLSA coverage should apply in this matter based on the aforesaid facts concerning Plaintiff's job duties; however, Plaintiff also requests the Court find that the FLSA stands *pari passu* with the statute addressed in *Heart of Atlanta Motel* concerning the issue of interstate commerce and statutory coverage.

3. ***Individual FLSA Liability.***

Defendants also argue that since the individual Defendant Mavis Simpson's liability is derivative of the corporate Defendant, the Court should also dismiss Defendant Simpson. Defendants' legal argument in their memorandum is based simply on such derivative argument, and therefore if FLSA coverage is found (or is still a question of

---

matter because the alleged jurisdictional nature of enterprise coverage was not in dispute. *Turcios,* 275 Fed. Appx. at FN5. Moreover, the Southern District of Florida has been "persuaded by the reasoning in *Arbaugh* that the requirement that a plaintiff establish individual or enterprise coverage is not jurisdictional." *Rodriguez v. Diego's Restaurant, Inc*., 619 F.Supp.2d 1345, 1350 (S.D. Fla. 2009).

material fact), summary judgment should not be granted as to Simpson. Defendants do not raise further legal argument as to Simpson (other than to vaguely reference 203(d)) and therefore the Court should not entertain an arguments in reply that go beyond Defendants' derivative argument.

**WHEREFORE** THE PLAINTIFF REQUESTS THAT THE COURT DENY DEFENDANTS' MOTION IN ITS ENTIRETY.

**Respectfully submitted,**

**K. DAVID KELLY, ESQ.**
**J.H. ZIDELL, P.A.**
**ATTORNEY FOR PLAINTIFF**
**300 71ST STREET, #605**
**MIAMI BEACH, FLA. 33141**
**PH: 305-865-6766**
**FAX: 305-865-7167**
**EMAIL: DAVID.KELLY38@ROCKETMAIL.COM**
**F.B.N. 0123870**

**BY:_______/s/ K. David Kelly__________________**
**K. DAVID KELLY, ESQ.**

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING WAS SENT SUBSEQUENT TO E-FILING ON 8/25/11 TO:**

**(VIA CM/ECF)**
**GLASSER, BORETH & KLEPPIN**
***ATTORNEY FOR DEFENDANTS***
**8751 W. BROWARD BLVD.**
**SUITE 105**
**PLANTATION, FL 33324**
**FAX (954) 474-7405**

**BY:__ /S/ K. DAVID KELLY ______________________**
**K. DAVID KELLY, ESQ.**